RECEIVED
IN LAKE CHARLES, LA.

FEB - 5 2013

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAMES GUTHRIE AND WILLIAM EARL GUTHRIE | : | DOCKET NO. 2:12 CV-1904 –PM-KK |
| VS. | : | JUDGE MINALDI |
| PLAINS RESOURCES INC., ET AL | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is the plaintiffs', James and William Earl Guthrie, Appeal [Doc. 33]
from the Magistrate Judge's Order [Doc. 32] denying the plaintiffs' Motion to Remand [Doc. 11]
and granting the Mosbacher defendants'[1] Motion to Amend/Correct Notice of Removal [Doc.
28]. The Mosbacher defendants filed a response [Doc. 36]. For the reasons stated herein, the
Magistrate Judge's ruling will be AFFIRMED.

### BACKGROUND

In this lawsuit, the plaintiffs seek to recover for damage that the defendants allegedly
caused to the plaintiffs' land during oil and gas exploration and production activities.[2] The
plaintiffs originally filed this case on July 15, 2011 in the 38th Judicial District Court in Cameron
Parish.[3] The Mosbacher defendants then removed the case to this court on July 13, 2012,
alleging that diversity jurisdiction existed because all of the properly joined and served

---

[1] The Mosbacher defendants include Robert A. Mosbacher, Sr., through Robert A. Mosbacher, Jr. in his capacity as
representative of The Estate of Robert A. Mosbacher, Sr. and Mosbacher Energy Company.

[2] Pls.' Compl., [Doc. 1-5], at ¶ 2.

[3] See generally id.

defendants were diverse from the plaintiffs, and the amount in controversy exceeded $75,000.[4]

While the Mosbacher defendants acknowledged in their Notice that diversity was lacking

between the plaintiffs (Louisiana citizens) and one defendant, Premier Energy Partners, LLC (a

limited liability corporation whose sole member is a Louisiana citizen), they argued that diversity

still existed because Premier was improperly joined.[5]  The Mosbacher defendants concluded this

because in their petition, the plaintiffs had expressly disclaimed any potential claims against

parties (like Premier) who intended to file for bankruptcy.[6]

The plaintiffs, in their Motion to Remand, averred that the Mosbacher defendants could

not prove that the plaintiffs had fraudulently/improperly joined Premier, and that the Notice of

Removal itself was defective because: (1) the notice was untimely; (2) the notice failed to

adequately allege the citizenship of all the parties; (3) all defendants did not consent to removal;

(4) the notice failed to contain a short and plain statement of why all defendants did not provide

consent; and, (5) the required documentation was not included in the notice.[7]  The Mosbacher

defendants subsequently filed a Motion to Amend/Correct their Notice of Removal in order to

rectify some of the deficiencies the plaintiffs listed in their Motion to Remand.[8]

On November 27, 2012, the Magistrate Judge denied the plaintiffs' Motion to Remand

and granted the Mosbacher defendants' Motion to Amend/Correct.  First, the Magistrate Judge

found that Premier was improperly joined because the plaintiffs had no viable cause of action

---

[4] Defs.' Not. of Removal, [Doc. 1] at pgs. 2-3.

[5] *Id.* at pg. 3.

[6] *Id.* The Mosbacher defendants averred that they learned that Premier planned to file bankruptcy after the sole member of Premier provided an affidavit in which he said that Premier was insolvent and planned to file for bankruptcy. *See* Aff. Of Paul E. Holmes, [Doc. 1-1].

[7] *See generally* Pls.' Mem. in Supp. of Mot. to Remand, [Doc. 11-1].

[8] Defs.' Mot. to Amend/Correct Not. of Removal, [Doc. 28].

against Premier.[9] This conclusion was based on paragraph 40 of the plaintiffs' petition, which provided that

> Plaintiffs herein expressly do not pursue any defendants or claims that have been discharged in bankruptcy, and if a party or parties has or intends to file for bankruptcy concerning any of the claims alleged herein, it is the express intention of the plaintiffs not to pursue those claims or party or parties in this action, even if such party of parties have been inadvertently named as a defendant above. [10]

The Mosbacher defendants referenced a July 27, 2012 affidavit they had attached to their Notice of Removal from Paul Holmes, the sole member and manager of Premier, in which he attested that Premier's liabilities exceed its assets and Premier intended to file for bankruptcy.[11]  Further, they included, as an exhibit, a portion of Holmes' deposition transcript, in which he claimed that in early March 2012, he had contacted a bankruptcy attorney, and, while no decision had been made as to when to file bankruptcy, it was certain that Premier would "imminently" file under either Chapter 7 or 11.[12]  The Magistrate Judge concluded that because the plaintiffs had "expressly and unequivocally renounce[d] any cause of action against any defendant intending to pursue bankruptcy protection," and the evidence indicated Premier would soon file for bankruptcy, Premier's domicile would not "factor into the jurisdictional equation" and destroy diversity.[13]

Addressing the plaintiffs' procedural concerns on whether the Mosbacher defendants' Notice of Removal was deficient enough to justify remand, the Magistrate Judge similarly found

---

[9] Mem. Ruling, [Doc. 30], at pgs. 5-6.

[10] *Id.*, *see also* [Doc. 1-5] at ¶ 40.

[11] [Doc. 1-1].

[12] Holmes Dep., [Doc. 16-4], at pg. 101:2 – 102: 3.

[13] [Doc. 30] at pg. 6.

remand was improper.  First, she held that the Mosbacher defendants had timely removed the cause of action within the requisite thirty day period, because they had removed within thirty days of receipt of Holmes' affidavit which established that Premier would be filing for bankruptcy.[14]  Second, she found that while the original Notice of Removal did not correctly allege the corporate citizenship of three of the corporate parties (Plains Resources, Mosbacher Energy Corp., and Smith Production Company), the Mosbacher defendants had filed a Motion to Amend/Correct the Notice of Removal which would correct these deficiencies, and that amendment was proper.[15]  Third, she found that the Notice of Removal was not defective for lack of obtaining the consent, in writing, of each defendant who had been properly joined and served.[16]  She reached this conclusion because the two defendants who had not provided consent were never properly served and thus did not need to provide consent.[17]  Fourth, the Magistrate Judge found that the Notice of Removal was not defective for lack of providing a short and plain statement explaining why the same two defendants who had not joined the removal, since these were non-served defendants, and thus the Mosbacher defendants were not required to explain their absence of consent to removal.[18]

The plaintiffs now appeal the Magistrate Judge's decision.

---

[14] *Id.* at pg. 9.

[15] *Id.* at pgs. 10 – 11.

[16] *Id.* at pgs. 12 – 14.

[17] *Id.* at pgs. 13 – 14. The first defendant, Wiley P. Ballard, Jr., was deceased on the date of his alleged service and thus could not be served, and the second defendant, the estate of Wiley P. Ballard, Jr., had not been properly served because an estate cannot be made party to a suit – instead, the representative had to be made a party, and the plaintiffs had neither done this nor served the estate's representative.

[18] *Id.* at pg. 15.

## STANDARD OF REVIEW

Magistrate judges are empowered by the United States Code to "hear and determine" non-dispositive pretrial motions. 28 U.S.C. § 636(b)(1)(A). If a party is dissatisfied with a magistrate judge's ruling, it may appeal to the district judge, who may reconsider the ruling and reverse it "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). A finding is clearly erroneous when a reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## LAW & ANALYSIS

### I.    The Magistrate Judge Did Not Err in Allowing the Mosbacher Defendants to Amend their Notice of Removal to Cure Procedural Deficiencies

Many of the plaintiffs' assignments of error to Judge Kay's ruling revolve around the procedural deficiencies present in the Notice of Removal at the time the Mosbacher defendants filed it. In their brief, the plaintiffs reassert that the notice is deficient since the Mosbacher defendants did not state the corporate defendants' principal places of business or states of incorporation.[19]

The plaintiffs' contention that remand is proper based on these deficiencies rests on the presumption that the Magistrate Judge's granting of the Mosbacher defendant's Motion to Amend the Notice of Removal, which cured the deficiencies, was improper.[20] The Mosbacher

---

[19] Pls.' Appeal of Mag. Judge Decision, [Doc. 33], at pg. 16. The plaintiffs appear to abandon their arguments on whether the Mosbacher defendants were required to obtain consent to removal from the deceased Wiley P. Ballard or his estate, or else provide a short statement on why these two defendants did not consent to removal, and thus the undersigned will not address those arguments in this opinion.

[20] *See id.* at pg. 27-29.

defendants respond by asserting that the Fifth Circuit gives broad discretion to judges to allow amendments curing deficiencies in a notice of removal, even if more than thirty days have passed since removal, and thus the Magistrate Judge acted properly in allowing the amendment.[21]

Once the thirty-day removal period has expired, a party may still amend its removal notice to remedy defective allegations of jurisdiction. *See* 28 U.S.C. § 1653; *see also Fontenot v. Global Marine, Inc.*, 703 F.2d 867, 871 n. 7 (5th Cir. 1983) (noting that a party could cure defective allegations of jurisdiction as late as an appeal). The general rule in the Fifth Circuit is that a party may amend its notice of removal to cure a defective (as opposed to missing) allegation of jurisdiction. *D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 146 – 47 (5th Cir. 1979). The plaintiffs argue that the Magistrate Judge was incorrect in allowing an amendment because the Notice of Removal did not contain defective allegations of corporate citizenship – it contained no allegations of corporate citizenship *at all*.[22] As such, the plaintiffs argue that Section 1653 cannot be used to "insert missing allegations."[23]

The undersigned agrees with the Magistrate Judge's conclusion that the plaintiffs' strict reading of Section 1653 would essentially preclude amendments to Notices of Removal except in the narrowest of circumstances. The original Notice of Removal notes that Plains Resources is a "Texas Corporation," Mosbacher Energy is a "Texas Corporation," and Smith Production Company is a "Mississippi Business Corporation."[24] The undersigned is uncertain how the plaintiffs could maintain that these allegations of citizenship are nonexistent as opposed to imperfect: at most, it creates the assumption that these corporate defendants are both

---

[21] Defs.' Resp. to Pls.' Appeal of Mag. Judge Decision, [Doc. 36] at pgs. 6 –7.

[22] [Doc. 33] at pgs. 19 – 20.

[23] *Id.* at pg. 19.

[24] [Doc. 1] at pg. 3.

incorporated in and have their principal place of business in the same state.[25] It is not apparent from the plaintiffs' briefs what an "imperfect" as opposed to "nonexistent" allegation of corporate citizenship would even look like based on the plaintiffs' hyper-technical reading of Section 1653.

While the case cited by the Magistrate Judge, *D.J. McDuffie*, does not specifically delineate what made the allegations of diversity imperfect as opposed to nonexistent in that case's notice of removal, courts in this circuit have allowed parties to amend their notices of removal to add statements on the principal place of business or place of incorporation for a corporate entity. *See, e.g., Firemen's Ins. Co. v. Robbins Coal Co.*, 288 F.2d 349, 350 (5th Cir. 1961) (allowing a defendant to amend a Notice of Removal which originally stated that the defendant was a "citizen of New Jersey" and the plaintiff was a "citizen of Alabama" to include allegations that their principal places of business were also in those states); *see also Booty v. Shoney's*, 872 F.Supp. 1524, 1528 – 29 (E.D. La. 1995) (allowing a defendant to amend a Notice of Removal which originally stated that the defendant was domiciled in Tennessee and had its principal place of business in Tennessee to include the allegation that it was also incorporated in Tennessee). As the Magistrate Judge's decision on this issue was not clearly erroneous, the plaintiffs' claims on this issue fail.

## II.     The Magistrate Judge Did Not Err in Finding that the Amount in Controversy was Met

For the first time on appeal, the plaintiffs additionally allege that the Mosbacher defendants did not establish that the jurisdictional amount in controversy by a preponderance of

---

[25] This assumption is actually true for Mosbacher Energy and Smith Production Company, while Plains is incorporated in Delaware and has its principal place of business in Texas. *See* Amended Not. of Removal, [Doc. 34], at pg. 3.

7

the evidence in their Notice of Removal.[26]  They allege that the Magistrate Judge came to the

conclusory decision that it was clear from the face of the plaintiffs' petition that the plaintiffs'

claims met the amount in controversy requirement of 28 U.S.C. § 1332, instead of "engag[ing] in

an independent evaluation of the jurisdictional facts related to jurisdictional amount in

controversy."[27]  The Mosbacher defendants aver that the amount in controversy was not in

dispute, and that even if it had been, the Magistrate Judge was correct in finding that "it was

facially apparent based on the plaintiffs' original petition that the claim for damages satisfies the

requisite jurisdictional amount" because the plaintiffs' case was comparable to other oil and gas

disputes in which the amount in controversy was well over $75,000.[28]

Looking to the Mosbacher defendants' original Notice of Removal and amended Notice

of Removal, the Mosbacher defendants allege that the amount in controversy is clearly over

$75,000 based on the face of the plaintiffs' petition.[29]  The Mosbacher defendants further note

that the plaintiffs do not cite a specific dollar amount, but that they are seeking damages for "tort

remediation, breach of contract, and the cost of conducting a comprehensive and expedited

environmental assessment of all present and yet unidentified pollution and contamination of their

property."[30]  Damages would be claimed for large tracts of land in Cameron Parish.[31]

When a plaintiff does not set forth the amount of controversy in a petition, "the removing

defendant must prove by a preponderance of the evidence that the amount in controversy exceeds

---

[26] [Doc. 33] at pg. 15.

[27] *Id.*

[28] [Doc. 36] at pg. 8.

[29] [Doc. 1] at pg. 2; [Doc. 34] at pg. 2.

[30] *Id.*

[31] *See generally* [Doc. 1-5].

[$75,000]. *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993). A court may determine that removal was proper if it is facially apparent that the claims are likely above $75,000. *Id.* at 57. "If not, a removing attorney may support federal jurisdiction by setting forth *facts* in controversy – preferably in the removal petition, but sometimes by affidavit – that support a finding of the requisite amount. *Allen v. R& H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (referencing *Garza v. Bettcher Indus. Inc.,* 752 F.Supp. 753, 763 (E.D. Mich. 1990).

Here, as per the rule in the Fifth Circuit's *De Aguilar*, the Magistrate Judge found that it was "facially apparent from plaintiffs' original petition that the claim for damages satisfies the requisite jurisdictional amount."[32] She did not go into an in-depth analysis of this issue because the parties did not contest it.[33] Reviewing similar cases to the instant case, the undersigned cannot say that it the Magistrate Judge's conclusions on this point were clearly erroneous. This is a complex oil and gas case which involves multiple defendants, multiple claims, and multiple wells. To argue that this case would not far exceed the jurisdictional minimum of $75,000 ignores a long history of comparable case law on oil and gas contamination in which successful plaintiffs received several times the jurisdictional minimum. *See, e.g., Martin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So. 3d 234, 243 ($20 million jury verdict for plaintiff in oil and gas contamination case); *Corbello v. Iowa Prod.*, 02-0826 (La. 2/25/03), 850 So. 2d 686, 696 ($33 million awarded in restoration damages for property contaminated by oil and gas activities).

### III.   The Magistrate Judge did not Err in Finding that Premier was Fraudulently or Improperly Joined

Finally, the undersigned addresses the argument which constitutes the bulk of the plaintiffs' objections: that Premier, a non-diverse defendant, was not improperly or fraudulently

---

[32] [Doc. 33] at pg. 3.

[33] *Id.*

joined. As noted *supra*, the Mosbacher defendants removed this case to federal court after receipt of an affidavit from the sole member of Premier, in which he notes that Premier's debts exceed its assets and it intends to file for bankruptcy at some indeterminate date in the future. [34] The Mosbacher defendants argued, and the Magistrate Judge agreed, that this affidavit triggered the provisions of paragraph 40 of the plaintiff's petition, in which the plaintiffs noted that they would not pursue claims against parties that either filed for bankruptcy or intended to file for bankruptcy. [35]

The removing party bears the burden of proving the propriety of removal. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993). Moreover, "federal courts have been directed to construe the removal statute against removal and in favor of remand to state court." *Rush v. Am. Security Ins. Co.*, 2006 WL 3733817, *1 (E.D. La. Dec. 14, 2006). A defendant may remove a suit to federal court when an in-state defendant has been improperly joined. *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004). A defendant may establish improper joinder in one of two ways: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Id.* (quoting *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). To find the second version of improper joinder exists, there must be "no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

In conducting this analysis, the district court may "pierce the pleadings" and consider "summary-judgment type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most

---

[34] The plaintiffs do not refute in their objections whether the Magistrate Judge improperly found that removal was timely because the defendants removed within thirty days of receipt of this affidavit, and thus the undersigned will assume this issue is nondisputed

[35] [Doc. 33] at pgs. 5 – 6.

favorable to the plaintiff." *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004). Although the inquiry into the evidence is similar to that of a summary judgment proceeding, "the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." *Id.* The plaintiffs do not allege fraud in the pleadings, so the undersigned must determine whether the Magistrate Judge's finding that there is no reasonable basis to predict that the plaintiffs might be able to recover against Premier is clearly erroneous.

The plaintiffs argue that the Mosbacher defendants cannot meet the heavy burden of proving that there is "absolutely no possibility" of recovery against Premier and thus meet the requirements of improper joinder.[36] They note that this case is distinguishable from other cases where courts found joinder to be improper, because in those cases, the plaintiff could not recover against a defendant *as a matter of law*, and not because the plaintiff had pledged not to pursue claims against the defendant if certain events occurred.[37] They then argue that they have a possibility of recovery as a matter of law against Premier under the doctrine of solidary obligation, which provides that Premier, an assignee, is solidarily liable with its assignor, the previous assignor, its assignee, and their assignees for the restoration obligations contained in the mineral lease following contamination.[38]

Faced with the potential dismissal of Premier, the plaintiffs appear to backtrack from the statement made in paragraph 40 of their petition. They instead argue that a party's "self-serving expression of intent to file for bankruptcy protection does not determine whether or not a claim or party may be dismissed or otherwise abandoned. The intent to file for bankruptcy protection

---

[36] [Doc. 33] at pg. 18.

[37] *Id.* at pgs. 19 – 20.

[38] *Id.* at pgs. 21-23.

does not equate to automatic dismissal of a claim."[39]  The plaintiffs further provide that Premier

has not "sought severance or dismissal from this litigation despite having knowledge of the

contents of Paragraph 40."[40]  They indicate that the fact that Premier might file a Chapter 11

bankruptcy would indicate that the plaintiffs did have a possibility of recovery against Premier,

since Premier "could simply reorganize [its] finances and [thus Chapter 11 bankruptcy would]

not automatically equate to or result in liquidation of assets."[41]

　　　　Thus, the plaintiffs' reading of paragraph 40 essentially means that the plaintiffs will

dismiss a party at their discretion, and that the "self-serving" proof of Premier's impending

bankruptcy offered by the defendants has not sufficiently triggered their discretionary dismissal.

In the absence of this discretionary dismissal, plaintiffs assert that a valid cause of action against

Premier still technically exists.  In essence, the court's inquiry is broken into two parts: (1) are

the plaintiffs absolutely bound by the provisions of paragraph 40? (2) if so, at what point does

intent to file for bankruptcy transition from an ephemeral declaration to do something in the

future to a concrete possibility necessitating dismissal of a party?

　　　　On the first issue, the undersigned notes that, in general, "factual assertions in pleadings

are . . . judicial admissions conclusively binding on the party that made them. . . . Facts that are

admitted in the pleadings are no longer at issue." *Davis v. A.G. Edwards and Sons, Inc.*, 823

F.2d 105, 108 (5th Cir. 1987) (holding that a plaintiff was bound by statement in petition

regarding "date objectionable trading practices" were discovered); *see also Ferguson v.

Neighborhood Housing Services*, 780 F.2d 549, 551 (6th Cir. 1991) (holding that a defendants

was bound by statement in answer that it was a FLSA employer). In contrast, a party is not

---

[39] *Id.* at pg. 24.

[40] *Id.*

[41] *Id.*

absolutely bound by a legal argument in a petition, and may plead in the alternative. *See Insurance Co. of North America v. West of England Shipowners Mut. Ins. Ass'n.*, 1995 WL 529850, *1 (E.D. La., Sept. 6, 1995) (holding that a party was not bound by an assertion in its petition that an insurance policy was void *ab inito,* and was thus allowed to assert in the alternative that the policy was valid, because this was a legal argument and not a factual allegation).

Here, the plaintiff's provisions in paragraph 40 do not squarely fit into either a legal argument or a factual allegation: instead, it is a self-imposed restriction establishing against whom the plaintiffs will pursue claims. The undersigned finds, however, that this restriction is more analogous to a factual statement than a legal argument, because it merely states what the plaintiffs will do if a certain condition is met, as opposed to asserting a legal argument against one of the defendants: "if a party or parties has or intends to file for bankruptcy concerning any of the claims alleged herein, it is the *express intention* of the plaintiffs not to pursue those claims or party of parties in this action."[42] As such, and because the plaintiffs have not moved to amend their petition to remove paragraph 40, this provision remains binding on the plaintiffs.

Moving to the second inquiry, the undersigned finds that, reviewing the affidavit and deposition transcript of Holmes, it is readily apparent that Premier "intends" to file bankruptcy, thus triggering Premier's dismissal. Holmes states, in a sworn affidavit, that Premier is insolvent, that he has retained a bankruptcy attorney, and that bankruptcy filing is imminent.[43] The only thing that could make his intent more concrete would be if he were to present the bankruptcy filing papers to the plaintiffs right before filing them. Indeed, the undersigned can

---

[42] [Doc. 1-5] at ¶ 40.

[43] [Doc. 1-1].

imagine a situation in which, if remand were ordered, the plaintiffs will almost certainly be faced with Premier's actual filing for Chapter 7 or 11, at which point, unless it ignores the clear language of its own petition (to dismiss any party that has filed for bankruptcy concerning any of the claims alleged in its petition), it would have to dismiss Premier, which would once again trigger the defendants to remove.  This type of procedural gamesmanship only serves to waste time, when it is apparent, reading paragraph 40 of the petition in conjunction with Holmes' affidavit and deposition transcript, that Premier will soon drop from the suit.

Finally, while admittedly the "no possibility of recovery" case law all deals with instances where a party must be dismissed because there is no possible recovery at law, and not because a situation has arisen which indicates that the plaintiff will not pursue claims against a defendant, the undersigned finds that this is not a meaningful distinction, and thus does not indicate a clearly erroneous finding on the part of the Magistrate Judge.  While finding that a plaintiff cannot recover as a matter of law is distinguishable from finding that a plaintiff will not pursue claims against a certain type of defendant, the end result is the same: the particular defendant will not remain in the lawsuit.  As such, whether through dismissal on the merits of the claim or because of a voluntary self-imposed provision to dismiss a party, there is no possibility of recovery against that party.

14

## CONCLUSION

For the reasons stated herein, the magistrate judge's ruling denying the plaintiffs' Motion to Remand is AFFIRMED.

Lake Charles, Louisiana, this ___5___ day of ___February___ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT
JUDGE