RECEIVED
IN LAKE CHARLES, LA.

JUN - 7 2013

TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAMES AUSTIN GUTHRIE, ET AL | : | DOCKET NO. 2:12 CV-1904 –PM-KK |
| VS. | : | JUDGE MINALDI |
| PLAINS RESOURCES INC., ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [Doc. 37], filed by the defendants, Mosbacher Energy, Co. and Robert A Mosbacher Estate, Sr. ("the Mosbacher defendants"). The plaintiffs, James Austin Guthrie and William Earl Guthrie, filed an opposition [Doc. 40] and the Mosbacher defendants filed a reply [Doc. 44]. For the foregoing reasons, the Mosbacher defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### FACTUAL AND PROCEDURAL BACKGROUND

In this lawsuit, the plaintiffs seek to recover for damage that various defendants allegedly caused, through oil and gas exploration and production activities, to multiple tracts of land the plaintiffs owned and/or used in Cameron Parish. The plaintiffs originally filed this suit on June 15, 2011, in the 38th Judicial District Court of Cameron Parish, Louisiana, and the defendants then timely removed it to this court on the basis of diversity jurisdiction.[1]

In the plaintiffs' complaint, the plaintiffs describe themselves as:

(1) lessors, assignees, or third-party beneficiaries of certain mineral and/or surface

---

[1] On November 27, 2012, Magistrate Judge Kay denied the plaintiff's Motion to Remand, finding that the non-diverse defendant, Premier, had been improperly joined. [Doc. 32]. The plaintiffs then appealed Judge Kay's decision to this court, which subsequently affirmed her decision on February 5, 2013. [Doc. 41].

leases between plaintiffs and defendants, and/or (2) successors in interest to certain mineral and/or surface leases between plaintiffs and defendants, and/or (3) owners of property contaminated by the oil and gas activities conducted or controlled by one or more of the defendants, and/or (4) successors in interest to, or the assigns of, the owners of property contaminated by the oil and gas activities conducted or controlled by one or more of the defendants, and/or (5) servitude owners who have the right to sue for remediation damages under the Mineral Code, and/or (6) parties who possess the right of action to file this lawsuit under Louisiana law.[2]

The plaintiffs then list the various defendants who conducted oil and gas exploration and production activities as: Plains Resources, Inc., Wiley P. Ballard, Jr., The Estate of Wiley P. Ballard, the Mosbacher defendants, Smith Production Company of Mississippi, and Premier Energy Partners, L.L.C.[3]  The plaintiffs contend that these defendants operated various wells from 1960 – 2005,[4] and that their property "is believed to be contaminated" by oil and gas activities,[5] or else the defendants are "otherwise legally responsible for this contamination."[6] The plaintiffs assert claims for damages for four different sections of land, to wit: "any and all of the property that [the plaintiffs] own or may own in Sections 36 and Section 37, Township 15 South, Range West and in regular Sections 4 and 5, Township 15 South, Range 9 West,

---

[2] Pls.' Compl., [Doc. 1-5], at ¶ 3.

[3] Id. at ¶ 4. The Mosbacher defendants note in their Motion to Dismiss that the "Plaintiffs also named as a defendant Wiley P. Ballard, but he is deceased and incapable of being sued. La. Code Civ. P. art. 734. The Estate of Wiley P. Ballard also is an improper defendant, as the proper defendant against a succession is the succession representative, not the 'estate.' Rec. Doc. 32, p. 14. Regardless, Plaintiffs have not attempted to serve the succession representative, who has not appeared in the case." Mosbacher Defs.' Mot. to Dismiss, [Doc. 37-1], at p. 2, n. 2.

The Mosbacher defendants also correctly pointed out in their Motion to Dismiss that Premier was not a defendant in the present action, because Magistrate Judge Kay had found that Premier was improperly joined. Id. This finding was affirmed by the undersigned. See supra note 1.

[4] Id. at ¶ 5.

[5] These activities include "operation or construction of various oil and gas facilities, including but not limited to, pits, wells, sumps, pipelines, flowlines, tank batteries, wellheads, measuring facilities, separators, and injection facilities." Id.

[6] Id.

regardless of whether said property is specifically described in this petition."[7]

The plaintiffs then attach exhibits to their complaint to demonstrate the alleged contamination, including: (1) maps which show the plaintiffs' property and the location, by symbol and serial number, of each well mentioned in the complaint;[8] (2) Historical Aerials from 1968 through 2007 which show the location of pits and pit scarring, along with the wells and facilities located on the plaintiffs' property;[9] (3) the Operator History, which shows each well's serial number, well name, the operating company, and the dates of operation of each well and their current status.[10]  The plaintiffs also specifically list in their complaint the well serial numbers and dates of operation for each defendant, including the Mosbacher defendants.[11]

After listing the defendants, the plaintiffs make the overarching argument that the "[d]efendants conducted, directed, controlled or participated in various oil and gas exploration and production activities on the plaintiffs' property as operators, and/or working interest owners, and/or mineral or surface lessees, and/or mineral or surface lease assignees, and/or mineral sublessees, and/or servitude, executive interest or other mineral interest owners, and/or personal or predial servitude owners."[12]

The plaintiffs then list several theories of liability against the entire group of defendants, including: fraud; breach of contract; trespass; nuisance; Civil Code Articles 486, 576, 577, 645,

---

[7] *Id* at ¶ 2.

[8] Ex. A to Pls.' Compl., [Doc. 1-5], at p. 21.

[9] Ex. B to Pls.' Compl., [Doc. 1-5] at pp. 22 – 25.

[10] Ex. C to Pls.' Compl., [Doc. 1-5] at pp. 26 – 62.

[11] [Doc. 1-5] at ¶ 5.  The wells attributed to the Mosbacher defendants are: well serial number 85915 (operated 1961-1983); well serial number 89275 (operated 1962 -1983); well serial number 117980 (operated from 1966 to 1981); and, well serial number 120154 (operated from 1967 to 1981).

[12] *Id.* at ¶ 6.

667, 2315, 2315.3, 2317, 2322, 2683, 2686, 2688 and 2692; Mineral Code Articles 22, 128, and 129; and, Revised Statutes 30:29 and 31:122.[13]

The plaintiffs seek damages for (1) remediation;[14] (2) breach of the joint operating and unit agreements pertaining to this suit;[15] (3) diminution in value of their property caused by nuisance or stigma damages;[16] (4) unjust enrichment;[17] (5) monetary damages equal to the cost to conduct a comprehensive and expedited environmental assessment of the contamination on the property;[18] and, (6) punitive damages, although they concede that these damages are only available for conduct that occurred during former Article 2315.3's period of applicability.[19] The plaintiffs also seek a prohibitory and mandatory injunction requiring the defendants to remove the pollutants in the soil and groundwater.[20]

The Mosbacher defendants now move to dismiss the plaintiffs' allegations against them, arguing that the plaintiffs' allegations are cursory and fail to meet the pleading standards required to state a claim under Fed. R. Civ. P. 12(b)(6). They also argue that the plaintiff's fraud allegations fail to meet the pleading with particularity standards required to state a claim under Fed. R.Civ. P. 9(b). Finally, they assert that the plaintiffs' punitive damages claims against them should be dismissed because they are unavailable for the time period that the Mosbacher

---

[13] *Id.* at ¶¶ 14 –15, 17 – 37, 41, 43 – 47.

[14] *Id.* at ¶ 32.

[15] *Id.* at ¶ 33.

[16] *Id.* at ¶ 34.

[17] *Id.*

[18] *Id.* at ¶ 36.

[19] *Id.* at ¶ 29.

[20] *Id.* at ¶ 35.

defendants operated on the plaintiffs' land.

## RULE 12(B)(6) STANDARD

A motion filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of a plaintiff's allegations. FED. R. CIV. P. 12(b)(6).  When ruling on a 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and construes all reasonable inferences in a light most favorable to the plaintiff or nonmoving party. *Gogreve v. Downtown Develop. Dist.*, 426 F. Supp. 2d 383, 388 (E.D. La. 2006).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 678, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1950. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Id.*  Courts will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir.2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir.2005)); *see also Iqbal*, 556 U.S. at 664, 129 S.Ct. at 1940 ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")

In the Fifth Circuit case *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009), the court held that neither *Twombly* nor *Ashcroft* created a heightened pleading standard for

complaints, and that these cases instead only "explicate" Rule 8(a)(2), particularly because *Twombly* recognized that pleading requirements could only be changed through amendment of the Federal Rules. *Id.* at 258 – 59 (citing *Twombly*, 550 U.S. at 569, 127 S.Ct. 1973 n. 14). Accordingly, Fed. R. Civ. P. 8(a)(2) still only requires a "'short and plan statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (citations omitted). This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law, provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

Additionally, although a court is generally relegated to the pleadings in deciding a motion to dismiss, the court may also consider documents attached to the complaint and the motion to dismiss which the complaint refers to and are central to the plaintiff's claims. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 – 99 (5th Cir. 2000)).

## LAW & ANALYSIS

### I.   The Complaint's Non-Fraud Claims against all Defendants are Sufficiently Specific, and thus Dismissal is Unwarranted

The Mosbacher defendants' first argument is that the plaintiffs' entire complaint should be dismissed because the complaint is vague and/or conclusory, and fails to set forth sufficient specific factual allegations to show how each defendant is liable. They note that the plaintiff's complaint contains "allegations and conclusions about all of the defendants without linking any specific act or omission to any particular defendant, despite the petition's express allegation that

6

each defendant had interests in different wells over different periods of time." Essentially, by "lumping" together all of the defendants, the defendants are "left with little idea of how to respond to the allegations."

The plaintiffs counter that their petition does contain sufficient detail to survive a motion to dismiss. They note that the petition contains information on: (1) the property at issue, which is identified by legal description; (2) the number of wells involved, their serial numbers, and their precise locations; (3) the types of claims relied upon; (4) the causes of pollution on the plaintiffs' property; (5) the chemical constituents of the drilling fluids used for drilling activities on the land; (6) the types of damages sought; and, (7) additional information on each well, included in the exhibits attached to the complaint.

A few cases in the Western District of Louisiana have addressed similar issues to the one at hand, and thus provide guidance to this court. For example, in *Gaspard One, L.L.C. v. BP America Production Co.*, No. 07-1551, 2008 WL 863987 (W.D. La., Mar. 31, 2008), landowner-plaintiffs in Cameron Parish, Louisiana, sued several defendants (BP, Pan American, and the State of Louisiana), claiming that oilfield waste had contaminated their land, and that the defendants had failed to warn them about the hazards of disposing of the waste. *Id.* at *1. As in this case, the complaint named all of the defendants, and then globally made claims against the defendants as a group.[21] *Id.* BP and Pan American then filed a Motion for More Definite

---

[21] The allegations in the *Gaspard* complaint included:

> "Defendants, at all relevant times, operated wells and equipment on the property that produced waste including hazardous and toxic substances. Defendants disposed of and/or released these wastes onto the property and then failed to clean such up. Defendant abandoned the lease without removing waste, pipes, and other equipment and debris on the property." (Gaspard Complaint, ¶ 3).

> "Defendants knowingly, willfully, wantonly, and negligently caused Plaintiffs' real and personal property to become contaminated by oil, grease, salt water, and other hazardous toxic and

Statement under Fed. R. Civ. P. 12(e), arguing that the plaintiffs' complaint was vague and ambiguous and should be dismissed or, in the alternative, the plaintiffs should be ordered to amend their petition to state claims against the defendants with specificity. *Id.*

In denying the defendants' motion, Judge Doherty noted that "motions for more definite statement[s] are disfavored in view of the great liberality of Rule 8 of the Federal Rules of Civil Procedure, which permits notice pleading." *Id.* at *3. Concluding, Judge Doherty found that:

> Applying the foregoing legal principles to the facts of this case, this Court concludes the instant motion for more definite statement should be denied, as the Court finds plaintiffs' petition is not "so vague it cannot be responded to." Specifically, plaintiffs have identified the subject property in Paragraph III(1) of their Petition as "property described as Section 2, Township 12 South, Range 9 West, Cameron Parish, Louisiana." This Court concludes the foregoing property description is sufficient to put defendants on notice of the property at issue in this litigation. Furthermore, the remaining information sought by defendants, including the timing of contamination, the identity of the toxic or hazardous

---

carcinogenic chemicals that originated from their operations on the leased property." (Gaspard Complaint, ¶ 4).

"Upon information and belief, Defendants abandoned and improperly closed an oil waste pit on the property." (Gaspard Complaint, ¶ 5).

"Upon information and belief, Defendants knowingly, willfully, wantonly, and negligently performed improper cleanups on the Plaintiffs' property, thereby spreading and burying the existing contaminants and increasing the cost of any future cleanup of the property," (Gaspard Complaint, ¶ 6).

"Defendants improperly maintained equipment resulting in spills and leaks of oil and production wastes which contaminated the soil and water on the Plaintiffs' property." (Gaspard Complaint, ¶ 7).

"Defendants failed to clean up the site or to maintain the site in a prudent and business-like manner. Defendants left abandoned pipelines, pits and other equipment on the site and left areas of the property contaminated with oilfield wastes." (Gaspard Complaint, ¶ 8).

"Defendants failed to warn Plaintiffs that their disposal and discharge activities would be hazardous to human health and the environment. Defendants concealed the hazardous nature of the materials that they allowed to enter into and onto the Plaintiffs' land." (Gaspard Complaint, ¶ 10).

"As the holder of oil, gas, and mineral leases, Defendants are obligated to restore the surface of the property to its original condition at the earliest reasonable time." (Gaspard Complaint, ¶ 14).

*Gaspard,* 2008 WL 863987 at *1-*2.

substances, and specific information regarding the oil and gas leases at issue, is information that should already [be] in the possession of defendants or is more properly obtained via discovery.

*Id.* (citations omitted).

In 2009, this court faced a similar situation to the one presented in *Gaspard*, in *Sweet Lake Land and Oil Co. v. Exxon Mobil Corp*, no 2:09-01100, 2009 WL 4716090 (W.D. La., Dec. 9, 2009). In *Sweet Lake*, the plaintiff, Sweet Lake Land and Oil Co. ("Sweetlake"), sued four different oil and gas companies, alleging that their oil and gas activities had contaminated two tracts of its land.[22] As in *Gaspard* and this case, the complaint listed the oil and gas defendants (including their wells and the specific location of each well), and then made broad allegations against the defendants as a group.[23] After Sweetlake amended its original complaint, one of the

---

[22] "Defendants' operations on the Property contaminated the soil and groundwater with produced water, oil, drilling muds, technologically enhanced naturally occurring radioactive materials (sometimes referred to as "TENORM"), hydrocarbons, metals, and other toxic and/or hazardous substances, wastes and pollutants (sometimes collectively referred to herein as "substances"). Defendants also left scrap equipment, pipelines, flow lines, gathering lines, piping and concrete and other debris on the Property. Sweetlake Compl., [Doc. 10], at ¶ 10, in case no. 2:09-cv-01100 (W.D. La., Sept. 16, 2009).

The land was described as "all of section 7 and the west half, and the west half of the east half, of section 8 in Township 12 South, Range 6 West, and Section 12,Township 12 South, Range 6 West, all in Cameron Parish, Louisiana (the "Property")." (Sweetlake Compl. at ¶ 5).

[23]The allegations in the *Sweetlake* complaint included:

"Defendants negligently, recklessly and/or intentionally stored and disposed of the substances in pits located on and/or adjacent to the Property. (Sweetlake Comp. at ¶ 13)

"Defendants, having specialized knowledge and training, knew or should have known that disposal of substances in pits would result in seepage contaminating the surface and subsurface soil and water on the Property." (Sweetlake Comp. at ¶ 14)

"Defendants negligently and/or intentionally released substances onto the Property by leaks, spills and other discharges from defendants' pipelines, wells, tank batteries, pits, gas plants, gas meters and other equipment, facilities, and operations.." (Sweetlake Comp. at ¶ 15)

"Defendants' negligent, intentional and/or reckless conduct resulted in some sudden and accidental releases of the substances that have contaminated the Property." (Sweetlake Comp. at ¶ 16)

"Some or all of the substances left by defendants on the Property are migrating downward and/or outward, contaminating more of the Property, and increasing plaintiff's damages, each day."

oil and gas defendants, Faulconer, filed a Motion for More Definite Statement under Fed. R. Civ.

P. 12(e). As in *Gaspard*, the court denied the motion, finding that the complaint sufficiently set

forth claims such that Faulconer had fair notice of the claims against it:

> [The complaint describes the] property that was polluted by the defendants' oil
> and gas operations, as well as the specific well operated by Faulconer on Sweet
> Lake's property. *See* Amended Complaint ¶¶ 5, 8. The complaint identifies how
> Faulconer's operations caused the pollution, i.e., Faulconer's storage and disposal
> of produced water and other substances in pits, abandonment of equipment, and
> leaks and discharges from Faulconer's oil and gas facilities. *See* Amended
> Complaint ¶¶ 10–11, 13, 15, 19, 21, and 25. The complaint further identifies the
> types of claims and potentially viable theories upon which relief from Faulconer
> is sought, i.e., breach of contract, negligence, nuisance, trespass, punitive
> damages, unjust enrichment, and breach of the duty of good faith. *See* Amended
> Complaint ¶¶ 6, 12–13, 15, 19, 23, 25–27, and 29–30. The complaint specifies the
> damages it seeks from Faulconer relative to the alleged pollution caused by oil
> and gas operations. *See* Amended Complaint ¶¶ 23, 26, 32, 33, and 34.
> Considering the notice requirement of Rule 8, this Amended Complaint

---

(Sweetlake Comp. at ¶ 17)

"Defendants negligently failed to restore, or negligently restored, the Property after it was no
longer needed for their oil and gas operations, leaving hazardous and/or toxic substances and
pollutants, abandoned equipment and locations, pipelines and other material on the Property".
(Sweetlake Compl. at ¶19)

"In wanton or reckless disregard of public safety, defendants intentionally, recklessly and/or
negligently stored, handled, transported, or disposed of hazardous or toxic substances on
theProperty." (Sweetlake Comp. at ¶ 21)

"By storing and/or disposing of the substances on the Property, defendants were unjustly enriched
by avoiding the cost of proper storage and/or disposal. Plaintiff is entitled to compensation for
defendants' unauthorized use of the Property for storage and/or disposal." (Sweetlake Comp. at ¶
23)

"Defendants knew or should have known that the failure to properly handle, store, transport,
and/or disposal of these substances and scrap would damage the Property, threaten human health,
and the environment and interfere with plaintiff's use." (Sweetlake Comp. at ¶ 24)

"The presence of the pits, substances and scrap on and under the Property constitutes a nuisance."
(Sweetlake Comp. at ¶ 27)

"Defendants concealed and did not disclose (a) the fact that they left the substances on the
property, (b) the nature of the substances that they left, or (c) the fact that the substances were
migrating above and below the surface of the Property. Defendants represented that their
operations were safe and not harmful to the Property." (Sweetlake Comp. at ¶ 29)

"Defendants breached their duty of good faith and fair dealing." (Sweetlake Comp. at ¶ 29).

adequately sets forth a claim and provides the respondents with fair notice of its basis. The Motion for A More Definite Statement pursuant to Rule 12(e) will be denied.

*Id.* at *3.

These two cases seem to indicate that the same generalized "lump pleading" the Mosbacher defendants complain of, by virtue of the fact that they would survive a 12(e) motion, certainly would also survive outright dismissal under 12(b)(6). The plaintiffs provide: (1) the property at issue, which is identified by legal description; (2) the number of wells involved, their serial numbers, and their precise locations; (3) the types of claims relied upon; (4) the causes of pollution on the plaintiffs' property; (5) the chemical constituents of the drilling fluids used for drilling activities on the land; (6) the types of damages sought; and, (7) additional information on each well, as included in the exhibits attached to the complaint.

While the Mosbacher defendants indicate that, under *Twombly* and *Iqbal*, these allegations are insufficient, courts have reiterated that these cases have not changed the notice requirements under Fed. R. Civ. P. 8(a)(2).   It bears repeating: Fed. R. Civ. P. 8(a)(2) still only requires a "'short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 511 U.S. at 93, 127 S.Ct. at 2200. This standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 555 U.S. at 556, 127 S.Ct. at 1965.

Further, the plaintiffs fortify their complaint by attaching exhibits (the maps which show

11

the plaintiffs' property and the location, by symbol and serial number, of each well mentioned in the complaint, the Historical Aerials from 1968 through 2007 which show the location of pits and pit scarring with the wells and facilities located on the plaintiffs' property, and the Operator History, which shows each well's serial number, well name, the operating company, and the dates of operation of each well and their current status, which this court may properly consider). As noted *supra*, in deciding a motion to dismiss, a court may review attached exhibits to a complaint or a motion to dismiss if the complaint refers to these exhibits and they are central to the complaint. *See Lone Star Fund*, 594 F.3d at 387. The complaint and exhibits, taken together, provide enough information to satisfy notice requirements.

The Mosbacher defendants seem to make an implicit argument that the "lump pleading" in the plaintiffs' complaint also suffers from being overly cumulative – they indicate that it is problematic that the complaint addresses four different sections of land, several different wells attributable to five different sets of defendants, and an overly broad time period, ranging from 1960-2005. Essentially, the Mosbacher defendants present the argument that the complaint improperly cumulates multiple actions against multiple defendants in the same suit, in that the claims against all of the defendants may not arise out of the same transaction, occurrence, or series of events, as per the requirements of Fed. R. Civ. P. 20(a), which governs permissive joinder. Indeed, the court has the power, when parties or causes of action have been improperly cumulated, "on motion or on its own . . . [to] add or drop a party [or] sever any claim against a party." FED. R. CIV. P. 21.

In determining whether a plaintiff properly joined multiple defendants, a court must consider the two prongs of Rule 20(a)(2): whether there is "(A) any right to relief is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of

12

the same transaction, occurrence, or series of transactions or occurrences; and, (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(A)(2). While the Fifth Circuit has not yet articulated a specific test for the first prong, several district courts in in the Fifth Circuit have applied the "logically related" test from the Eighth Circuit's *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 – 33 (8th Cir. 1974). *See Mannatech, Inc. v. Country Life, LLC*, no. 3:10-cv-533, 2010 WL 2944574 (N.D. Tex., July 26, 2010) (applying *Mosley*); *Adrain v. Genetec, Inc.*, no. 2:08-cv-423, 2009 WL 3063414 (E.D. Tex., Sept. 22, 2009) (same); *Simoneaux v. Jolen Operating Co.*, no. Civ.A.04-2467, 2004 WL 2988506 (E.D. La., Dec. 15, 2004) (same). Under this test, "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Mosley*, 497 F.2d at 1333. Thus, a party may bring "all reasonably related claims for relief by or against different parties to be tried in a single proceeding ... [a]bsolute identity of all events is unnecessary." *Id.*

On the current record, it cannot be concluded that joinder of all of these defendants was improper or that this case would be more efficiently tried by severing the complaint into individual complaints against each defendant. Reviewing the complaint, while it is true that there are several different defendants, wells, and sections of land, the complaint shows that the defendants conducted common oil and gas activities on these tracts of land and produced the same contaminants. The complaint also asserts common legal theories of recovery against all defendants. Discovery may show that the causes of action against these multiple defendants are too divergent, and that severance would be proper (thus warranting a motion to sever at a later juncture), but at this time, it is premature to proceed with severance.

13

## II.  The Plaintiffs have Failed to Plead their Fraud Claims with Particularity, and are Granted Leave to Amend these Deficiencies

The Mosbacher defendants also assert that the plaintiffs have failed to meet the heightened pleading requirement for their fraud claims.  Instead, the Mosbacher defendants argue that the plaintiffs have made general allegations that the defendants "failed to inform" the plaintiffs about the "hazardous and toxic nature of the oilfield pollution on their property."

The plaintiffs counter that their allegations of concealment are sufficient because the Mosbacher defendants' oil and gas exploration and production activities are "peculiarly within Mosbacher's knowledge."   The plaintiffs then assert that, if the court still finds the petition to be deficient, they should be granted leave to amend.

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(B).  "What constitutes 'particularity' will necessarily differ with the facts of each case." *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir.2003) (quoting *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir.1992)). At the very least, "[p]leading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Williams v. WMX Technologies*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).  Furthermore, the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.*  The purpose of Rule 9(b)'s heightened pleading requirement is to give enough information to enable the adverse party to prepare a responsive pleading. *See Dudley v. Se. Factor & Fin. Corp.*, 446 F.2d 303 (5th Cir. 1971). In cases alleging a fraudulent omission of facts, Rule 9(b) requires the

14

plaintiff to plead the type of facts omitted, the place in which the omissions should have appeared, and how the omitted facts made the misrepresentation misleading. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir.2006).

> The relevant portion of the plaintiff's complaint is as follows:
>
> Plaintiffs did not have actual or constructive knowledge of the pollution described in this petition until less than a year prior to the filing of this suit. Plaintiffs did not have knowledge of the defendants' fault, negligence, and breach of contract until less than a year prior to the filing of this suit. Plaintiffs did not have knowledge of the causal connection between the defendants' fault, negligence, and breach of contract and the pollution at issue until less than a year prior to the filing of this suit. Alternatively, defendants have engaged in acts that effectually have prevented plaintiffs from availing themselves of the causes of action alleged herein. These acts include *fraud and misrepresentation intentionally committed by defendants (or their representatives) designed to hinder, impede, or prevent plaintiffs from asserting their causes of action or to lull plaintiffs into a false sense of security*. Such acts of fraud and misrepresentation include: (1) burying, hiding or actively concealing pollution; (2) failing to inform plaintiffs that the unlined earthen pits on their property seeped and leaked; (3) failing to inform plaintiffs that the use of unlined pits that seep and leak violate state regulation; (4) failing to inform plaintiffs that the failure to remove or remediate contamination caused by unlined earthen pits violates state regulation; (5) failing to inform plaintiffs that pollution that migrates out of the confines of an unlined earthen pit will continue to migrate, spread and cause further damage to their property; (6) failing to inform plaintiffs of the hazardous and toxic nature of the oilfield pollution on their property; and (7) failing to inform the plaintiffs that the oilfield practices followed by defendants would result in pollution and property damage. Due to defendants' concealment of the hazardous and toxic contamination that they deposited on the plaintiffs' lands, and the role they played in causing this contamination, plaintiffs were denied access to knowledge and facts needed to bring the claims alleged in this petition.[24]

Reviewing the requirements for Rule 9(b), it is clear that the plaintiffs' conclusory and generic allegations of fraud, which lump all of the defendants together, are insufficient to satisfy the heightened pleading requirement of Rule 9(b). The Mosbacher defendants are correct that this complaint's allegations of fraud are very similar to those found in a previous case before this court, *Martin v. Tesoro Corp.*, no. 2:11-CV-1413, 2012 WL 1866841 (W.D. La., May 21, 2012).

---

[24] [Doc. 1-5] at ¶ 14 (emphasis added).

15

In *Martin*, this court held:

> Mr. Martin has not pleaded concealment, misrepresentation, or fraud with
> sufficient particularity under Rule 9(b). Rule 9(b)requires plaintiffs to distinguish
> among each defendant they sue and set forth each defendant's responsibility for
> the allegedly fraudulent activities. . . . Mr. Martin generally alleges that the
> "defendants" prevented him from availing himself of judicial remedies but does
> not specify which defendant committed any of the fraudulent acts alleged.
> Moreover, he fails to allege when or how any defendant buried or actively
> concealed pollution. Finally, Mr. Martin does not allege the source of the
> defendants' duty to inform him of the alleged contamination on his property, why
> the defendants' failure to inform him of the contamination was misleading, or how
> the defendants "effectually prevented" him from bringing this lawsuit. His
> allegations concerning fraud are therefore deficient under Rule 9(b) . . .

*Id.* at *4 (citatons omitted).

Similarly, in this case, there are no (1) allegations distinguishing among each defendant

and their individual responsibility for the fraudulent activities; (2) no information on how, when,

or where the defendants buried or actively concealed the pollution; (3) no revelation of the

source of the defendants' duty to inform; and, (4) no explanation why the defendants' failure to

inform was misleading. Further, there is no time period specified for the acts of fraud – as noted

*supra*, this complaint concerns actions which stretched from 1960 – 2005. A forty-five year

period is certainly overly broad when considering the dearth of information provided for the

specific conduct of each defendant. *See Bishop v. Shell Oil*, no. 07-2832, 2008 WL 57833, *2

(E.D. La., Jan. 3, 2008) (holding that a plaintiffs' allegations of fraud, which spanned from 1967-

1986 and 1996-1997 were "extremely overbroad" and thus failed to meet the heightened

pleading standard of Rule 9(b)).

In the interest of justice, the plaintiffs' allegations concerning fraud are dismissed without

prejudice, and the plaintiffs are granted leave to amend their complaint within twenty (20) days

of the issuance of this opinion. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th

Cir.2000) ("a plaintiff's failure to meet the specific pleading requirements [of Rule 9(b) ] should

16

not automatically or inflexibility [sic] result in dismissal of the complaint with prejudice to re-filing.").

### III.   The Majority of the Plaintiffs' Punitive Damages under Former Article 2315.3 Should be Dismissed With Prejudice

Finally, the Mosbacher defendants assert that the plaintiffs are barred from seeking punitive damages under former La. Civ. Code art. 2315.3 (which was enacted in 1984 and repealed in 1996), because the Mosbacher defendants' actions did not occur within the period of applicability of article 2315.3. They assert that the plaintiffs fail to specify dates of any alleged contamination or of any Mosbacher defendant conduct warranting punitive damages that occurred between 1984 – 1996. Additionally, they note that, as per the face of the complaint, it is clear that the Mosbacher defendants ceased operations in 1983 (a full year before article 2315.3 was enacted), and thus the plaintiffs' punitive damages claims against the Mosbacher defendants, specifically, are barred.

The plaintiffs counter that their allegations are sufficient to state a cause of action for punitive damages. They note that, based on the operator history and the oil, gas, and mineral leases available to the plaintiffs, the Mosbacher defendants conducted operations on the plaintiffs' property for over twenty years, which concluded just prior to the institution of punitive damages in Louisiana. They conclude that discovery should proceed on this issue, so that the parties can ascertain whether, based on the evidence, there is a legal basis for recovery of punitive damages.

Article 2315.3 of the Louisiana Civil Code provides exemplary damages in which a "plaintiff's injuries were caused by the defendant's wanton or reckless disregard for public safety in the storage, handling, or transportation of hazardous substances." The article became effective on September 4, 1984 and was repealed on April 16, 1996. *Bujol v. Entergy Services, Inc.*, 2003–

0492 at 8 n. 6 (La.5/25/04), 922 So.2d 1113, 1121 n. 6. The Louisiana Supreme Court has held

that it cannot be applied retroactively. *See Anderson v. Avondale Indus., Inc.,* 2000–2799

(La.10/16/01); 798 So.2d 93, 102. Accordingly, it only applies to conduct that occurred between

September 4, 1984 and April 16, 1996. *Id.*

> Turning to the plaintiffs' complaint, the relevant portion provides:

> Defendants' actions in knowingly disposing of toxic and hazardous materials onto
> plaintiffs' property, in failing to clean up said pollution and stop its further
> migration, in allowing the migration of this pollution to offsite properties, and in
> failing to properly maintain their facilities where these toxic and hazardous
> materials were transported, handled, stored an disposed of, constitute "wanton or
> reckless disregard for public safety in the storage, handling or transportation of
> hazardous or toxic substances." Defendants are therefore liable to plaintiffs for
> punitive and exemplary damages pursuant to la. Civ. Code art. 2315.3. At all
> times pertinent hereto, defendants had actual physical possession or control of the
> toxic and hazardous substances described above.[25]

> In *Brownell Land Co., L.L.C. v. Apache Corp.,* no. A.05-322, 2005 WL 3543772 (E.D.

La., Oct. 13, 2005), cited by the Mosbacher defendants, Judge Africk similarly addressed

whether a plaintiff's article 2315.3 claims should be dismissed:

> In order to successfully plead a claim for punitive damages under this section,
> however, a party "must plead facts which establish their cause of action during the
> effective period of article 2315.3. *In re Harvey Term Litig.,* 872 So.2d 584,
> 586 (La.App. 4th 2004). Plaintiff's complaint does not specify the dates of the
> alleged contamination. Instead, plaintiff broadly alleges that "[s]ince at least the
> 1930s, some or all of the named oil company defendants have known that the
> disposal of oilfield wastes in unlined earthen pits or directly to waterways
> inevitably results in seepage which contaminates both surface and subsurface soils
> and waters." There are no facts that detail the specific dates of plaintiff's
> ownership of the property or defendant's leases. Further, there are no dates in
> plaintiff's complaint that suggest that the alleged contamination occurred on the
> plaintiff's property during the effective period of the statute or that defendant
> knew of such contamination during such time period. The Court cannot find that
> plaintiff has stated a sufficient claim for punitive damages which can withstand a
> motion to dismiss.

*Id.* at *2.

---

[25] [Doc. 1-5] at ¶ 29.

While the complaint before this court does similarly note that "[s]ince at least the 1930's the defendants have known that the disposal of oilfield wastes in unlined earthen pits inevitably results in seepage, which contaminates both surface and subsurface oils and waters,"[26] in contrast to the *Brownell* complaint, the plaintiffs' complaint does actually contain dates for each defendant's oil and gas operations activity.  The defendants Wiley P. Ballard and the Ballard and Cordell Corporation (successor in interest: Plains Resources) drilled two wells on December 23, 1960, which were plugged and abandoned on March 16, 1981, and September 18, 1962.[27] Defendant Smith Production Company of Mississippi drilled a well on June 13, 1995, which was plugged and abandoned on August 4, 2005, and another well which was drilled on June 3, 2003, and plugged and abandoned on June 29, 2005 (Premier Energy Partners, who was dismissed as fraudulently joined in this action, acquired an interest in these two wells in 2004).[28]  Finally, the Mosbacher defendants drilled two wells on August 10, 1961, which were both plugged and abandoned on March 30, 1983, and two other wells that were drilled December 16, 1966, and plugged and abandoned on January 1, 1981.[29]  This information is provided not only in the complaint, but also in the exhibits attached to the complaint.

As noted in Judge Barbier's opinion in *Brownwell Land Co., L.L.C. v. OXY USA Inc.*, no. 05-225, 2007 WL 1695195 (E.D. La., June 8, 2007), punitive damages under former article 2315.3 are not available for wells that have been plugged and abandoned prior to the enactment of the article.  *See generally id.*  Accordingly, aside from the Smith Production Company's well

---

[26] *Id.* at ¶ 7.

[27] *Id.* at p. 32.

[28] *Id.* at p. 34.

[29] *Id.* at pp. 32 – 33.

serial number 216730, which operated from June 13, 1995 to August 4, 2005, the court finds it is appropriate to dismiss with prejudice all other claims for punitive damages as they relate to the other wells on the plaintiffs' property, including the four wells operated by the Mosbacher defendants, since these wells were either plugged or abandoned before art. 2315.3 went into effect, or were drilled after art. 2315.3 was repealed.

## CONCLUSION

In conclusion, the court finds that the non-fraud claims in the plaintiff's complaint satisfy the notice requirements of Fed. R. Civ. P. 8(a), and the Mosbacher defendants' request to dismiss these claims are denied.  Further, the court finds that the plaintiffs have failed to meet the heightened pleading standard under Fed. R. Civ. P. 9(b) for their fraud claims, and thus these claims are dismissed without prejudice.  The plaintiffs are granted twenty (20) days from the issuance of this opinion to file an amended complaint which corrects these deficiencies.  Finally, the court finds that, aside from well serial number 216730 which was operated by Smith Production Company during the period that article 2315.3 was in effect, the plaintiffs' claims for punitive damages under 2315.3 should be dismissed with prejudice.

Lake Charles, Louisiana, this __5__ day of _____June_____ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT
JUDGE

20