RECEIVED
IN LAKE CHARLES, LA
AUG 11 2015
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JAMES AUSTIN GUTHRIE, ET AL., | * | CIVIL ACTION NO. 2:12-CV-1904 |
| Plaintiffs, | * | |
| v. | * | JUDGE MINALDI |
| PLAINS RESOURCES, INC., ET AL., | * | |
| Defendants. | * | MAGISTRATE JUDGE KAY |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM RULING

Before the court is the Motion to Dismiss the Third Party Demand of Smith Production Company of Mississippi ("Smith") [Doc. 81 & 97] filed by St. Paul Fire and Marine Insurance Company and St. Paul Surplus Lines Insurance Co. (collectively, "St. Paul"), to which Smith has filed a Response [Docs. 85 & 98], to which St. Paul has filed a Reply [Doc. 88]. For the following reasons, the Motion [Doc. 81] is hereby **GRANTED**.

## FACTS & PROCEDURAL HISTORY

James Austin Guthrie and William Earl Guthrie ("plaintiffs") filed suit on July 15, 2011, against Plains Resources Inc., Wiley P. Ballard, Jr., the Estate of Wiley P. Ballard, Jr., Robert A. Mosbacher, Sr., the Estate of Robert A. Mosbacher, Sr., Mosbacher Energy Company, Smith Production Company of Mississippi, and Premier Energy Partners, L.L.C. (collectively, "defendants"), in the 38th Judicial District Court for the Parish of Cameron, Louisiana.[1] The plaintiffs' petition alleges that their property has been contaminated or otherwise damaged by the oil and gas exploration of the various defendants.[2] The subject property, located in Cameron

---

[1] Pet. [Doc. 1-5], at ¶¶ 1-4.
[2] Pet. [Doc. 1-5], at ¶ 2. *See also* Pet. [Doc. 1-5], at ¶ 6 (wherein the plaintiffs allege that the defendants conducted, directed, controlled or participated in various oil and gas exploration and production activities on the plaintiffs' property as

Parish, Louisiana, is described as "all of the property that [the plaintiffs] own or may own in Section 36 and Section 37, Township 15 South, Range 10 West and in Irregular Sections 4 and 5, Township 15 South, Range 9 West, regardless of whether said property is specifically described in this petition."[3]

The plaintiffs filed suit seeking recovery under several theories of liability, including fraud, breach of contract, trespass, nuisance, Louisiana Civil Code articles 486, 576, 577, 645, 667, 2315, former 2315.3, 2317, 2322, 2683, 2688, and 2692; Mineral Code articles 22, 128, and 129; and Louisiana Revised Statutes §§ 30:29 and 31:122.[4] On July 13, 2012, the defendants removed the case to federal court, pursuant to the court's diversity subject matter jurisdiction under 28 U.S.C. § 1332.[5]

On June 7, 2013, the court issued a Judgment [Doc. 47] and accompanying Memorandum Ruling [Doc. 46] addressing a prior Motion to Dismiss [Doc. 37] that had been filed by Mosbacher Energy Company, and Robert A. Mosbacher, Jr., in his capacity as a representative of the estate of Robert A. Mosbacher, Sr. The court therein dismissed the plaintiffs' claims for fraud as to all of the defendants, without prejudice.[6] The court also dismissed all but one of the plaintiffs' claims for punitive damages pursuant to former Louisiana Civil Code article 2315.3, stating that, "aside from well serial number 216730 which was operated by Smith Production Company during the period that article 2315.3 was in effect, the plaintiffs' claims for punitive damages under 2315.3 should be dismissed with prejudice."[7] On March 23, 2015, St. Paul filed

---

operators, and/or working interest owners, and/or mineral or surface lessees, and/or mineral or surface lease assignees, and/or mineral sublessees, and/or servitude, executive interest or other mineral interest owners, and/or personal or predial servitude owners.).
[3] Pet. [Doc. 1-5], at ¶ 2.
[4] See Memo. Ruling [Doc. 46], at 3-4; Pet. [Doc. 1-5], at ¶¶ 14-15, 17-37, 41, 43-47.
[5] See generally Not. of Removal [Doc. 1].
[6] J. [Doc. 47].
[7] Memo. Ruling [Doc. 46], at 20. See also J. [Doc. 47].

a motion to dismiss the third-party demand of Smith alleging that there was no duty to defend Smith.

## LAW & ANALYSIS

### I. Motion to Dismiss Standard

Motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure seek the dismissal of an action for failure to state a claim and challenge the sufficiency of a plaintiff's allegations. *See* Fed. R. Civ. Pro. 12(b)(6). The Fifth Circuit has stated that motions to dismiss are generally viewed with disfavor and should rarely be granted. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (citing *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (additional citations omitted)).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The allegations must "raise the right to relief above the speculative level." *Id.* at 555. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Additionally, documents attached by a defendant to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiffs' complaint and are central to their claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

### II. Insurance Policies

An insurer's duty to defend is determined by applying the "eight corners rule."[8] *See, e.g., La. Stadium & Exposition Dist. v. BFS Diversified Prods., LLC*, 49 So.3d 49, 51 (La. Ct. App. 2010). In analyzing a motion to dismiss under the eight corners rule, the court compares the

---

[8] To the extent that there is a valid dispute as to whether Louisiana or Mississippi law applies, the court notes that Mississippi uses the same rule in determining an insurer's duty to defend. *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 225 (5th Cir. 2005).

allegations in the complaint to the language of the insurance policy to determine whether the complaint falls within the coverage offered by the insurance policy. *Id.* An insurance policy is a contract, and it is therefore subject to the rules of contract interpretation.[9] *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 420 (La. 1988) (citing *Carney v. Am. Fire & Indem. Co.*, 371 So.2d 815 (La. 1979)). If the policy is clear and expresses the intent of the parties, the agreement must be enforced as written. *Id.* (citing *Albritton v. Fireman's Fund Ins. Co.*, 70 So.2d 111 (La. 1953)).

There were thirty-three different insurance policies issued by St. Paul to Smith from 1995 to 2012.[10] In all policies, "pollution" is defined as "any actual, alleged or threatened discharge, dispersal, escape, migration, release or seepage of any pollutant."[11] "Pollutant is defined in all policies as "any solid, liquid, gaseous or thermal irritant or contaminant, including: smoke, vapor, soot, fumes; acids, alkalis, chemicals; and waste."[12] Additionally, many of the policies define "injury" as "bodily injury, personal injury, advertising injury or property damage or premises damage."[13]

### Policies 1-4 and 18-21

These policies all contain the following insuring agreement: "**Bodily injury and property damage liability**. We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury, property damage or premises damage that: happens while this agreement is in effect; and is caused by an event."[14] "Property damage" is defined to include

---

[9] A *Doerr* analysis is unnecessary in this matter. *See, e.g., Bridger Lake, LLC v. Seneca Ins. Co., Inc.*, No. 11-0342, 2013 WL 2458758 (W.D. La. June 6, 2013). However, even if *Doerr* applied, this court would reach the same conclusion. *See Grefer v. Travelers Ins. Co.*, 919 So.2d 758, 768-72 (La. Ct. App. 2005).
[10] *See* Ex. 2, Aff. of James Riddick [Doc. 81-3] ¶ 3.
[11] Ex. 2, Aff. of James Riddick [Doc. 83-3] ¶ 12.
[12] *Id.* ¶ 13.
[13] Ex. 2, [Doc. 81-3], at 24-39, 220-35. Although St. Paul states that all policies include the same definition, the court is hesitant to adopt this definition, as it was unable to locate all instances of the definition.
[14] Oil and Gas Commercial General Liability Protection [Doc 81-3], at 24, 221 (emphasis in original).

4

"pollution cleanup costs."[15] "Pollution cleanup costs" means "any loss, cost or expense for pollution work that results from your described operations," and "described operations" include "oil lease operations" and "natural gas lease operations."[16]

The policies also include the following exclusion for pollution:

> **Pollution.** We won't cover injury or damage or medical expenses that result from pollution at or from any:
> - protected persons' premises;
> - waste site;
> - protected person's work site;
> - offshore site;
> - of your products; or
> - of your completed work.
>
> Nor will we cover injury or damage that results from pollution involving any waste pollutant.[17]

### Policies 5-10

These policies all contain the following insuring agreement for "your pollution clean-up costs":

> **Your pollution clean-up costs.** We'll pay amounts you voluntarily incur or are legally required to pay for your pollution clean-up costs covered by this agreement that result from a sudden and accidental pollution incident which:
> - begins while this agreement is in effect;
> - results from your oil or gas operations, other than such operations that are or were performed at, on, in, or from a waste site; and
> - doesn't result from any intentional and willful violation of any governmental law, regulation, or rule by you or anyone acting on your behalf.
>
> *Your pollution clean-up costs* means any cost or expense for pollution work that's voluntarily incurred by you or that you are legally required to pay.
> But we won't consider any of the following to be your pollution clean-up costs:

---

[15] Pollution Coverage for Your Desired Operations Endorsement [Doc. 81-3], at 44, 238.
[16] *Id.*
[17] Oil and Gas Commercial General Liability Protection [Doc 81-3], at 37, 231-32 (emphasis in original).

- Any cost or expense voluntarily incurred by you for the part of pollution work that's unnecessary or unreasonable.
- Any cost or expense for that part of pollution work that involves any waste pollutant.
- Any administrative or criminal fine or penalty.

*Pollution work* means:
- the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing of any pollutant; or
- the responding to, or assessing, in any way the effects of any pollutant.[18]

A "sudden and accidental pollution incident" is defined as:

[T]he discharge, dispersal, escape, or release of a pollutant that:
- is sudden and accidental;
- begins on a specific date and at a specific time while the agreement is in effect;
- is first known within 30 days of its beginning by you or any of your employees, your operating agent or any of its employees, or your pumper-gauger or any of its employees;
- any protected person, your operating agent, or your pumper-gauger attempts to end as soon as possible after it first becomes known by you or any of your employees, your operating agent or any of its employees, or your pumper-gauger or any of its employees; and
- is first reported to us within 90 days after it first becomes known to you or any of your employees, your operating agent or any of its employees, or your pumper-gauger or any of its employees.[19]

These policies exclude coverage for "injury or damage" that results from "pollution at, on, in, or from any protected person's premises; waste site; or protected person's work site."[20] There is also no coverage for "injury or damage or medical expenses that result from pollution involving any waste pollutant."[21]

### Policies 11-17

These policies contain the following "pollution clean-up costs" insuring agreement:

---

[18] *Id.* ¶ 8 (emphasis in original).
[19] [Doc. 81-3], at 172-74.
[20] *Id.* at 104, 172.
[21] *Id.*

6

> **Pollution clean-up costs.** We'll pay amounts you voluntarily incur, or you're legally required to pay, for covered pollution clean-up costs that result from a sudden and accidental pollution incident which:
> - begins while this agreement is in effect;
> - results from your work or your completed work in the performance of your oil and gas operations, other than such work or completed work that is or was performed at, on, in or from a waste site; and
> - doesn't result from any intentional and willful violation of any governmental law, regulation, or rule by you or anyone acting on your behalf.
>
> *Pollution clean-up costs* means any cost or expense that:
> - is for pollution work; and
> - is reported to us within one year of the ending date of that pollution work.
>
> But we won't consider any of the following to be pollution clean-up costs:
> - Any cost or expense you voluntarily incur for the part of pollution work that's unnecessary or unreasonable.
> - Any cost or expense for that part of pollution work for pollution involving any waste pollutant.
> - Any cost or expense for any improvement to your real or personal property.
> - Any administrative or criminal fine or penalty.
>
> *Pollution work* means:
> - The testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing of any pollutant; or
> - The responding to, or assessing, in any way the effects of any pollutant.[22]

These policies also contain the same buy-back provision for "sudden and accidental pollution incident" as seen in Policies 5-10.[23] These policies also exclude coverage for "injury or damage" that results from "pollution at, on, in, or from any protected person's premises; waste

---

[22] [Doc. 81-3], at 82.
[23] *Id.* at 172-74.

7

site; or protected person's work site."[24] There is also no coverage for "injury or damage or medical expenses that result from pollution involving any waste pollutant."[25]

**Policies 22-33**

These policies contain the same buy-back provision for "sudden and accidental pollution incident" as seen in Policies 5-10.[26] These policies also exclude coverage for "injury or damage" that results from "pollution at, on, in, or from any protected person's premises; waste site; or protected person's work site."[27] There is also no coverage for "injury or damage or medical expenses that result from pollution involving any waste pollutant."[28]

All of the policies contain a pollution injury or damage exclusion that precludes coverage for "injury or damage" that results from pollution. Smith makes the argument in its opposition that this provision is ambiguous.[29] Smith posits that it is unclear whether "injury or damage" includes "bodily injury, property damage and/or personal injury."[30] Interpreting the contract according to its plain terms indicates that bodily injury, property damage, and personal injury would all be covered by the words "injury or damage." A provision that is broad does not mean that it is also concurrently ambiguous. The fact that other portions of the policy explicitly bar coverage for certain forms of injury, such as personal injury or advertising injury, only bolsters this conclusion.

The cases relied on by Smith urging a different interpretation of "injury or damage" are distinguishable. *See Titan Holdings Syndicate, Inc. v. City of Keene, N.H.*, 898 F.2d 265, 270-71 (1st Cir. 1990) (in which the policy explicitly provided coverage for personal injury or

---

[24] [Doc. 81-3], at 104, 172.
[25] *Id.*
[26] *Id.* at 9.
[27] *Id.* at 104, 172.
[28] *Id.*
[29] Smith Prod. Co. of Mississippi's Mem. in Opp. to St. Paul's Mot. to Dismiss Third-Party Demand [Doc. 86], at 17-22.
[30] *Id.*

advertising injury); *Great N. Nekoosa Corp. v. Aetna Cas. And Sur. Co.*, 921 F.Supp. 401, 404-05 (N.D. Miss. 1996) (in which the policy's exclusion only excluded "bodily injury or property damage"); *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1042 (7th Cir. 1992) (same); and *Grindheim v. Safeco Ins. Co. of Am.*, 908 F.Supp. 794, 799 (D. Mont. 1995) (same). The policies at issue in this case all specifically provide that coverage for injury or damage resulting from pollution is excluded. There is no modifying language that would restrict the exclusion to one form of injury or damage. Therefore, all injury or damage resulting from pollution is excluded from coverage.

Finally, Smith argues that an exception to the pollution exclusion for mobile equipment operating fluids reinstates coverage in this matter.[31] The complaint alleges that the plaintiffs have "suffered damages resulting from the improper disposal of oilfield wastes in unlined earthen pits, which were constructed by the defendants on or near the property during the course of oil and gas exploration and production activities."[32] Additionally, the plaintiffs allege that there is also pollution from "leas, spills, and other surface and subsurface discharges of [oilfield wastes] from wells, pipelines, tank batteries, gas plants and other equipment or facilities . . . ."[33]

Mobile equipment, as defined in the policies, is "any land vehicle that doesn't travel under its own power and is kept primarily for the ready movement of permanently attached specialized equipment; or is designed or kept primarily for other purposes, but not for carrying persons or cargo."[34] The complaint does not contain allegations that there was damage because of mobile equipment operating fluids. Therefore, there can be no reinstatement of coverage on these grounds. Accordingly,

---

[31] Smith Prod. Co. of Mississippi's Mem. in Opp. to St. Paul's Mot. to Dismiss Third-Party Demand [Doc. 86], at 14.
[32] Pet. for Damages [Doc. 1-5] ¶ 7.
[33] *Id.*
[34] [Doc. 81-3], at 95.

**IT IS ORDERED** that St. Paul's Motion to Dismiss [Doc. 81] be and hereby is **GRANTED.**

**IT IS FURTHER ORDERED** that St. Paul Fire & Marine Insurance Company and St. Paul Surplus Lines Insurance Company are **TERMINATED** as parties the above-captioned matter.

Lake Charles, Louisiana, this 10 day of Aug, 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE